E-FILED
Tuesday, 23 May, 2006  02:45:34 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### URBANA DIVISION

| | |
|---|---|
| WATSEKA FARMERS GRAIN COOPERATIVE COMPANY an Illinois cooperative corporation,<br><br>      Plaintiff,<br><br>vs.<br><br>F.C. STONE GROUP, INC., an Iowa corporation; MICHAEL WANNINGER, an individual; CHARLES CAMERON, an individual,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)    06-<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR DAMAGES AND FOR JURY TRIAL

COMES NOW the Plaintiff, WATSEKA FARMERS GRAIN COOPERATIVE

COMPANY, an Illinois cooperative corporation,  by and through its counsel of record, ROBERT

DODD & ASSOCIATES, P.C., attorneys at law, complains of the Defendants F.C. STONE

GROUP, INC., an Iowa corporation, MIKE WANNINGER, an individual and CHARLES

CAMERON, an individual as follows:

## JURISDICTION AND VENUE

1.        The Court has federal subject matter jurisdiction pursuant to the 7 U.S.C. A.

§25(c) (The Commodities Exchange Act) ; 18 U.S.C.A. §1965 (a) (The Racketeer Influenced and

Corrupt Organizations Act) and 28 U.S.C.A. §1337.

2.      The Court has supplemental subject matter jurisdiction of the pendent state law claims under 28 U.S.C. §1367.

3.      Venue is proper pursuant to 28 U.S. C. A. §1391 (b) as a substantial part of the transactions, acts, practices, events, courses of business or omissions constituting the violations complained of herein occurred within the jurisdiction of the United States District Court for the Central District of Illinois.

**PARTIES**

4.      Plaintiff, WATSEKA FARMERS GRAIN COOPERATIVE COMPANY  was and is, at all times relevant herein, an Illinois cooperative corporation, with its principal place of business in City of Watseka, County of Iroquois, State of  Illinois ("WATSEKA").

5.      From prior to August 9, 1995 to July 1, 2001, Farmers Commodities Corporation ("FCC")  was an Iowa corporation, registered as a futures commission merchant ("FCM") with its principal place of business in Des Moines, Iowa. On or about July 1, 2001, FCC purchased Saul Stone and Company and the combined companies merged and became F.C. Stone Group, Inc.(hereinafter "STONE").  From July 1, 2001 to present, Defendant  STONE was and is an Iowa corporation, with its principal place of business in Des Moines, Iowa and is registered as a futures commissions  merchant ("FCM"), registered with the Commodity Futures Trading Commission and is a member of all commodities exchanges. At all times herein mentioned, Defendant STONE was and is qualified to do business in Illinois and maintained an office in the City and County of Champaign, State of Illinois where the transactions and events complained of herein occurred.

2

6.      Defendant MIKE WANNINGER at all times relevant herein was and is an individual residing in the State of Illinois, City and County of Champaign, State of Illinois ("WANNINGER").

7.      Defendant CAMERON CHARLES is and at all times herein mentioned was, an individual residing in the City of Watseka, County of Iroquois, State of Illinois ("CHARLES").

8.      At all times pertinent to the allegations of this complaint, Defendant WANNINGER was a registered commodities broker, in the employ and under the direction and control of Defendant STONE and was its duly authorized agent and representative, and all acts of Defendant WANNINGER complained of herein were within the course and scope of his agency and employment with Defendant STONE and in furtherance thereof.

## FACTUAL ALLEGATIONS

9.      Plaintiff WATSEKA was a small grain elevator in Watseka, Illinois, founded in 1906 by local farmers to market their corn, wheat and soybean crops. As part of its financial goals, and to protect against substantial monetary loss, Plaintiff WATSEKA had over the years of its operations, engaged in hedging the elevators's grain positions on the futures market and reporting such positions to the Illinois Department of Agriculture ("IDA").

10.     On or about August 1995, Plaintiff WATSEKA entered into a customer agreement to open a commodity trading account in the City and County of Champaign, Illinois, authorizing Defendant STONE to "purchase and sell Commodity Contracts for Customer in accordance with Customer's oral and written instructions." A true and exact copy of such account customer agreement (hereinafter "Agreement") is attached hereto as Exhibit "A" and by

this reference incorporated herein.

11.     On or about August 9, 1995 and thereafter, Defendant STONE was advised by Plaintiff WATSEKA, by and through its officers and board of directors, that its financial objectives were to primarily guard against fluctuation in grain prices such as to avoid substantial losses. To that end, Plaintiff WATSEKA advised Defendant STONE that its commodity trading account should be used for hedge transactions commensurate with its financial goals.

12.     Notwithstanding,  in or about 1996, Defendant WANNINGER began placing orders from Defendant CHARLES on wheat futures that was speculative in that it took Plaintiff WATSEKA "out of  position" on wheat.  Dean Chestnut ("Chestnut"), the then  manager of the Defendant STONE office in Champaign, Illinois at which Defendant WANNINGER was employed, through routine oversight of brokers accounts under his supervision, noted that Defendant WANNINGER was day-trading the Plaintiff WATSEKA's account together with placing "long" wheat contracts in Plaintiff WATSEKA's account that were speculative. Thereafter, Chestnut met with the board of directors of Plaintiff WATSEKA and informed them that the Defendant STONE broker, Defendant WANNINGER through acceptance of Defendant CHARLES orders, had day-traded the WATSEKA accounts and placed Plaintiff WATSEKA out of position on wheat. The board of directors was unaware of the speculative activity of Defendant CHARLES and Defendant WANNINGER and the same had not been authorized by the Plaintiff WATSEKA's board.

13.     At that time, the board of directors once again instructed Defendant STONE, by and through its agent Chestnut, not to engage in grain speculation of the Plaintiff WATSEKA

4

accounts. Defendant STONE agreed. As a result, Defendant WANNINGER was reprimanded by Defendant STONE and removed from the Plaintiff WATSEKA's accounts and replaced with another Defendant STONE broker. Defendant STONE, by and through Chestnut and other authorized representatives, assured the board of directors of Plaintiff WATSEKA that speculation of its accounts would not occur again.

14.     Plaintiff WATSEKA relied on Defendant STONE'S representation and placed confidence and trust that Defendant STONE would not permit speculative trade in Plaintiff WATSEKA'S accounts and would trade Plaintiff  WATSEKA'S accounts according to its investment objectives and goals.

15.     Notwithstanding, commencing on or about October of 2003, once again, Defendant STONE, by and through its agent Defendant WANNINGER, began placing orders from Defendant CHARLES which converted Plaintiff  WATSEKA's soybean hedge positions into unauthorized speculative positions.

16.     Plaintiff WATSEKA, as a result of the speculative and unauthorized trading by Defendant STONE, by and through its agent, Defendant WANNINGER, accumulated a net long soybean futures position of approximately 1.2 million bushels thereby putting Plaintiff WATSEKA at substantial financial risk in the futures market. The board of directors of Plaintiff WATSEKA never authorized such speculative trading, of which Defendant STONE, by and through its agents, including Defendant WANNINGER, was aware.

17.     Thereafter, the soybean futures market declined sharply, to the detriment of the speculative long futures positions that had been created by Defendant WANNINGER for

5

Plaintiff WATSEKA.  Defendant STONE instituted margin calls on the "long" positions which

Plaintiff WATSEKA could not meet, resulting in liquidation of the accounts in an amount in

excess of four (4) million dollars and as a result, forced Plaintiff WATSEKA into liquidation.

Plaintiff WATSEKA closed on May 24, 2004, and surrendered its grain dealer and warehouse

licenses to the Illinois Department of Agriculture thereafter.

## COUNT I

(Violation of 7 U.S.C.A.§6b-
Fraud-Unauthorized Transactions
Against Defendant WANNINGER)

18.     Plaintiff repleads and realleges the allegations set forth in Paragraphs 1through 17

of the complaint and by this reference incorporates them herein.

19.     Commencing in or about October of 2003 and continuing through May

31, 2004, "the Relevant Time",  Defendant WANNINGER violated 7 U.S. C. §§ 6b(a)(i) and

(iii), in that he cheated or defrauded or attempted to cheat or defraud Plaintiff WATSEKA and

willfully deceived or attempted to deceive Plaintiff WATSEKA by:

(1)     placing orders from Defendant CHARLES for unauthorized speculative trading in

soybeans, creating a "net long position" in soybeans in the WATSEKA accounts,

contrary to Plaintiff WATSEKA's stated financial goals and objectives, express

instructions by the board of directors of Plaintiff WATSEKA and Defendant

STONE's representations that it would not engage in such speculative trading in

Plaintiff WATSEKA's accounts.

(2)     intentionally failed to disclose an objectively obvious danger to Plaintiff

6

WATSEKA's board of directors of the speculative positions that were traded by Defendant WANNINGER given Plaintiff WATSEKA's financial goals and position.

20.     In this regard, Defendant WANNINGER knew that Plaintiff WATSEKA's employee, Defendant CHARLES, was not authorized to speculatively trade the Plaintiff WATSEKA accounts, but due to Defendant WANNINGER's substantial influence with Defendant CHARLES through prior dealings, repeated urging, suggestions and recommendations which Defendant CHARLES routinely followed, Defendant WANNINGER effectively controlled the Plaintiff WATSEKA accounts when dealing with Defendant CHARLES.

21.     The Defendant WANNINGER engaged in this conduct in connection with orders to make, or making of, contracts of sale of any commodity for future delivery, made, or to be made, for or on behalf of other persons where such contracts for future delivery were or may have been used for (a) hedging any transaction in interstate commerce in such commodity, or the products or byproducts thereof, or (b) determining the price basis of any transaction in interstate commerce in such commodity, or (c) delivering any such commodity sold, shipped, or received in interstate commerce for the fulfillment thereof.

22.     During the Relevant Period, Plaintiff WATSEKA was damaged from the loss of the value of WATSEKA's commodities  accounts through such speculative trading together with commissions of WANNINGER paid as a result of such trading, all in excess of four (4) million dollars and according to proof at the time of trial.

**COUNT II**

(Violation of 7 U.S.C.A.§6b-
Fraud-Churning
Against Defendant WANNINGER)

23.    Plaintiff WATSEKA repleads and realleges the allegations contained in

Paragraphs 1 through 17 and by this reference incorporates them herein in full.

24.    During the Relevant Period, as reflected in the monthly account statements of

Defendant STONE, Defendant WANNINGER, engaged in churning of Plaintiff  WATSEKA's

account with Defendant STONE by engaging in contracts for corn and soybeans that were

excessive in size, kind and frequency given the nature of Plaintiff's business and its financial

objectives of hedging together with repeated day-trading of Plaintiff WATSEKA's commodities

accounts. Such activities were transacted by Defendant WANNINGER for Defendant's benefit

and in reckless disregard of the interest of the Plaintiff and its financial objectives and goals. The

daily reports of Defendant WANNINGER, as broker of Defendant STONE, which where mailed

or otherwise delivered to Plaintiff WATSEKA,  were destroyed by Defendant CHARLES in an

attempt to cover up his actions from the board of directors of Plaintiff WATSEKA and from the

IDA prior to the Plaintiff WATSEKA's surrender of its license to the IDA in May, 2004. Plaintiff

WATSEKA will amend this complaint to allege the specific size, kind and frequency of the

churning and excessive day-trading activity of the WATSEKA accounts and the exact

commissions of Defendant WANNINGER therefrom when these records are obtained through

the discovery process.

25.    At all Relevant Times, Defendant WANNINGER knew that Plaintiff

8

WATSEKA'S employee Defendant CHARLES was not authorized to speculatively trade the Plaintiff WATSEKA account, but due to Defendant  WANNINGER's substantial influence with Defendant CHARLES through prior dealings, repeated urging, suggestions and recommendations which Defendant CHARLES routinely followed, Defendant WANNINGER effectively controlled the Plaintiff WATSEKA accounts when dealing with Defendant CHARLES.

26.    During the Relevant Time period of churning by Defendant WANNINGER, Plaintiff WATSEKA was damaged in the loss of value to its commodities accounts together with commissions of Defendant WANNINGER, all in an amount in excess of four (4) million dollars according to proof at the time of trial.

## COUNT III

(Violation of 7 U.S.C.A. §2(a)(1)(B))

Fraud Against Defendant STONE)

27.    Plaintiff WATSEKA repleads and realleges the allegations contained in Paragraphs 1 through 17, 19, 20, 24 and by this reference incorporates them herein in full.

28.    During the Relevant Time, Defendant STONE violated Section 7 U.S.C.A. §2 (a)(1)(B) in that the fraudulent actions taken by Defendant WANNINGER as more particularly described herein were taken within the course and scope of Defendant WANNINGER's employment, agency and office with Defendant STONE and in furtherance of such agency, office and employment with Defendant STONE. Further, at all Relevant Times herein, Defendant STONE knew that:

(1)     Plaintiff WATSEKA did not authorize its employee Defendant CHARLES to

engage in any speculative trading, including churning and day-trading activity in

its commodities accounts;

(2)     that such speculative trading was an obvious risk to Plaintiff WATSEKA'S

continued viability given its financial position and goals;

(3)      that Defendant WANNINGER, who had been previously been taken off the

Plaintiff WATSEKA accounts  for speculative trading,  had once again

commenced such speculative trading activity with Defendant CHARLES in the

Plaintiff WATSEKA accounts.

(4)      Due to Defendant WANNINGER'S substantial influence with Defendant

CHARLES through prior dealings, repeated urging, suggestions and

recommendations, which Defendant CHARLES routinely followed, Defendant

WANNINGER effectively controlled the Plaintiff WATSEKA accounts when

dealing with Defendant CHARLES.

29.     During the Relevant Period, Plaintiff WATSEKA was damaged from the loss

of the value of WATSEKA'S commodities  accounts through such speculative trading together

with commissions of WANNINGER paid as a result of such trading, all in excess of four (4)

million dollars according to proof at the time of trial.

**COUNT IV**

(Violation of 7 U.S.C.A. §25(a)(1)(B)
Against Defendant WANNINGER)

10

30.      Plaintiff repleads and realleges the allegations set forth in Paragraphs 1 through 17, 19, 20, 24 and by this reference incorporates them herein.

31.      At all Relevant Times herein, Defendant WANNINGER, by and through Defendant STONE,  engaged in the purchase and sale of speculative contracts for soybean commodities for future delivery or option on such contract) in Plaintiff WATSEKA's commodities accounts and such speculative contracts made through Defendant WANNINGER were the cause of damages to Plaintiff WATSEKA.

32.  Plaintiff WATSEKA was damaged from the loss of the value of WATSEKA'S commodities  accounts through such speculative trading together with commissions of Defendant WANNINGER paid as a result of such trading, all in excess of four (4) million dollars and according to proof at the time of trial.

33.      Such violation by Defendant WANNINGER was willful and intentional and as such Plaintiff WATSEKA is entitled to punitive or exemplary damages equal to two times the amount the actual damages that may be awarded according to proof at the time of trial.

**COUNT V**

(Violation of 7 U.S.C.A. §25(a)(1)(B)
Commodities Exchange Act-Aiding & Abetting
Against Defendant STONE)

34.      Plaintiff repleads and realleges the allegations set forth in Paragraphs 1 through 17, 19, 20, 24 and 31of the Complaint and by this reference incorporates them herein.

35.     At all Relevant Times herein, Defendant STONE willfully aided, abetted and induced the commission of the unauthorized and illegal speculative trading by Defendant WANNINGER in that Defendant STONE:

(1)     knew that WANNINGER had engaged in speculative trading previously in Plaintiff WATSEKA'S accounts and that he had been removed from dealing with Plaintiff WATSEKA as a result of the board of directors displeasure with speculated trading in the Plaintiff WATSEKA account;

(2)     knew that Plaintiff WATSEKA employee Defendant CHARLES did not have board authority to engage in speculative trading;

(3)     knowingly permitted Defendant WANNINGER, once again, to trade in the Plaintiff WATSEKA account with Defendant CHARLES which, because of his prior dealings and recommendations, which Defendant CHARLES routinely followed, Defendant WANNINGER effectively controlled the WATSEKA accounts when dealing with Defendant CHARLES;

(4)     knew that Plaintiff WATSEKA'S commodity account was being traded speculatively notwithstanding the Plaintiff WATSEKA instructions not to speculate its account in keeping with its financial goals and objectives and representations by Defendant STONE that it would not speculatively trade the Plaintiff WATSEKA account.

(5)     Instituted a margin call on the "long" contracts placed by Defendant WANNINGER resulting in the financial collapse of Plaintiff WATSEKA.

36.   Plaintiff WATSEKA was damaged from the loss of the value of WATSEKA'S commodities  accounts through such speculative trading together with commissions of Defendant WANNINGER paid as a result of such trading, all in excess of four (4) million dollars and according to proof at the time of trial.

37.    At all Relevant Times, Defendant STONE, by and through it actions as set forth above, knowingly rendered substantial assistance to Defendant WANNINGER in furtherance of his violation of §7 U.S.C.A. §25 (a)(1)(B). Such violation by Defendant STONE  was willful and intentional and as such Plaintiff WATSEKA is entitled to punitive or exemplary damages equal to two times the amount the actual damages, which are in excess of this Court's jurisdictional amount, that may be awarded by this Court according to proof at the time of trial.

## COUNT VI

(Violation of 18 U.S.C.A. §1961, et. seq.
"RICO"
Against Defendants WANNINGER and STONE)

38.    Plaintiff repleads and realleges the allegations set forth in Paragraph 1 through17 and by this reference incorporates them herein.

39.    Defendant STONE is an "enterprise" as that term is defined in 18 U.S.C.A. Section 1961(4) engaged in interstate commerce and carrying on activities that affect interstate commerce. Such activities in and affecting interstate commerce include, among other things, the purchase and sale of commodities that move in interstate commerce.

40.    Defendant WANNINGER is an "person" as that term is defined in 18 U.S.C.A. Section 1961(3), and was employed and affiliated with Defendant STONE .

13

41.     Defendant WANNINGER participated, directly or indirectly, in the conduct of the affairs of the Defendant STONE, a FCM, in that he was a registered commodities broker, employed by Defendant STONE to engage in the placing of commodities contracts for the purchase and sale of commodities for commissions and profit.

42.   To that end in or about October of 2003, Defendant WANNINGER devised a scheme and artifice to deprive Plaintiff WATSEKA of its property by engaging in unauthorized speculative trading with Defendant CHARLES, in order to create commissions for himself.

43.     Defendant WANNINGER, for the purpose of executing the scheme and artifice to defraud Plaintiff WATSEKA of its property, used the United States wires and the mails in interstate commerce, including, without limitation  the following:

(1)     On at least a weekly basis, from October 1, 2003 to May 31, 2004, placing telephone conversations, e-mails and facsimiles regarding the placing of such unauthorized trades from Defendant CHARLES to Defendant WANNINGER contrary to Plaintiff WATSEKA'S stated financial goals and objectives, express instructions by the board of directors of Plaintiff WATSEKA and Defendant STONE's representations that it would not engage in such speculative trading in Plaintiff WATSEKA'S account;

(2)     On a least a monthly basis, from October 1, 2003 to May 31, 2004, e-mailing and mailing of account statements to Defendant CHARLES reflecting the unauthorized commodities trading in WATSEKA's accounts;

(3)     On at least a weekly basis, from October 1, 2003 to May 31, 2004, utilizing the

14

telephones and e-mails to intentionally misrepresent and fail to disclose an

objectively obvious danger to Plaintiff WATSEKA of the speculative positions

that were traded by Defendant WANNINGER given Plaintiff WATSEKA's

financial goals and position;

(4)     On or about May 31, 2004, through the use of United States mail, telephone and

electronic wire to demand payment from Plaintiff WATSEKA for monies owing

as a result of such unauthorized trading subsequent to the liquidation of Plaintiff

WATSEKA's commodities trading accounts as a result of such unauthorized

trades.

44.     At all times herein mentioned, Defendant WANNINGER, was the agent and

employee of Defendant STONE and in doing the things herein alleged was acting within the

course and scope and in furtherance of such agency and employment.

45.     The use of the United States mails and wire for the purposes of effectuating the

above-mentioned unauthorized commodity trading scheme to defraud Plaintiff WATSEKA,

which occurred on more than one occasion in the past ten years, together with the transmission of

interstate communications by wire or telephone to effectuate the scheme, which occurred on

more than one occasion in the past ten years, constitutes, for the purposes of this action, a pattern

of racketeering activity in violation of 18 U.S.C.A. Section 1962, for which the Defendants,

WANNINGER and STONE, and each of them, are liable to Plaintiff WATSEKA for treble

damages, costs of suit and attorney fees pursuant to 18 U.S.C.A. § 1964(c).

### COUNT VII

15

(Breach of Fiduciary Duty

Against Defendant STONE)

46.     Plaintiff repleads and realleges the allegations set forth in Paragraphs 1

through 17 and by this reference incorporates them herein.

47.     At all times pertinent to this complaint, and in particular after the representations

by Defendant STONE by and through its agent Chestnut and others that Defendant STONE

would not speculatively trade the WATSEKA accounts and  replacement of WANNINGER as

the broker on Plaintiff WATSEKA'S account in or about 1996, Plaintiff  reposed confidence and

trust in Defendant STONE to handle plaintiff's commodities account in accordance with

plaintiff's stated and represented investment objectives in order to preserve its limited financial

resources through hedging of its grain positions, and not to trade its account speculatively, thus

giving rise to a fiduciary duty on the part of Defendant STONE to plaintiff.

48.     The acts of Defendant STONE, by and through its agent, WANNINGER, as set

forth herein worked a constructive fraud on plaintiff and constituted a breach of fiduciary duty on

the part of the Defendant STONE.  The handling of Plaintiff's commodities account by the

Defendant STONE, by and through its employee and agent, Defendant WANNINGER, was

outrageous and showed complete indifference to and conscious disregard for the best interests of

plaintiff and was in reckless disregard of plaintiff rights with full realization of the probable

results.

49.     At all times herein mentioned Defendant WANNINGER was acting within the

course and scope of his agency and employment with Defendant STONE and in furtherance of

16

such agency and employment.

50.     As a direct and proximate result of Defendant STONE'S breach of fiduciary duty
plaintiff has suffered damages in excess of the jurisdictional amount of this Court according to
proof at the time of trial.

## COUNT VIII

(Negligent Supervision

Against  Defendant STONE)

51.     Plaintiff repleads and realleges the allegations set forth in Paragraphs 1 through
17  and by this reference incorporates them herein.

52.     Defendant STONE, knew or had reason to know that Plaintiff WATSEKA would
be subjected to an unreasonable risk of harm from Defendant WANNINGER in permitting him
to engage in commodity trading in the Plaintiff WATSEKA account with Defendant CHARLES.

53.     Defendant STONE, when retaining Defendant WANNINGER as a broker in its
employ, had a duty to Plaintiff WATSEKA to establish, maintain and enforce a system of
supervision of its individual broker's, including Defendant WANNINGER  to trade the Plaintiff
WATSEKA commodities account commensurate with Plaintiff WATSEKA'S stated goals and
objectives.

54.     Defendant STONE, during the Relevant Period,  breached that duty to
Plaintiff WATSEKA in that it failed to establish, maintain and enforce a system of supervision of
its agent and employee broker, Defendant WANNINGER such as to prevent speculative and
excessive unauthorized trading in Plaintiff WATSEKA's commodity account. Defendant

STONE, as a result of being required to take Defendant WANNINGER off the WATSEKA

trading account, knew or had reason to know that Defendant WANNINGER was unfit and

untrustworthy to trade commodities in the WATSEKA commodities account.

55.     As a direct and proximate result of Defendant STONE'S failure to properly

supervise its employee and agent WANNINGER, Plaintiff WATSEKA was damaged in the

amount in excess of the jurisdictional amount of this court, subject to proof at the time of trial.

### COUNT IX

(Negligence Per Se Against Defendants WANNINGER and STONE)

56.     Plaintiff repleads and realleges the allegations set forth in Paragraphs 1 through

17 of the Complaint and by this reference incorporate them herein.

57.     At all times herein mentioned and in particular during the Relevant Time period,

Defendant WANNINGER, owed a duty to Plaintiff WATSEKA to manage Plaintiff's account in

keeping with the instructions of the board of directors and in a competent, lawful manner.

58.     On or about the Referent Time period, Defendant WANNINGER breached that

duty of due care to Plaintiff in that he began trading in speculative commodities in the Plaintiff

WATSEKA commodities account, against the express instructions of the board of directors of

Plaintiff WATSEKA and Illinois law specifically, Illinois Grain Code, 240 ILCS 40/10-10 which

permitted Plaintiff WATSEKA to speculate only up to 25,000 bushes of soybeans in excess of its

hedged position.

59.     As a direct and proximate result of the negligence of Defendants, and each of

them, Plaintiff WATSEKA has sustained damage in an amount in excess of the jurisdictional

amount of this court according to proof at the time of trial.

## COUNT X

(Conspiracy to Defraud Against Defendants CHARLES, WANNINGER and STONE)

60.     Plaintiff repleads and realleges the allegations set forth in Paragraphs 1 through 17 of the Complaint and by this reference incorporates them herein.

61.     Commencing on or about October, 2003 and continuing thereafter until on or about May 31, 2004, in the city of Champaign, county of Champaign, State of Illinois, Defendants STONE, WANNINGER and CHARLES,  and each them, contrived, maliciously, unlawfully and wrongfully to engage in speculative and unauthorized trading in Plaintiff's WATSEKA'S  commodities account at Defendant STONE to keep such conspiracy from Plaintiff WATSEKA in order to further their own financial gain.

62.     At all times herein mentioned in the complaint, pursuant to the conspiracy and in furtherance of the design and purposes of the conspiracy, Defendant CHARLES began placing speculative grain orders with Defendant WANNINGER. The Defendants, and each of them, knew that neither Defendant CHARLES nor Defendant WANNINGER had the authority of the board of directors of Plaintiff to engage in such trading but did so in pursuit of their own financial gain. The Defendants, and each of them, agreed that Defendant CHARLES would place such speculative orders for grain, that Defendant WANNINGER on behalf of Defendant STONE, would accept such speculative orders and that Defendant CHARLES would falsify, destroy or obstruct the records of such speculative transactions from the board of directors so that the same could not be discovered by Plaintiff WATSEKA.

63. Because of this conspiracy among and between the Defendants, and each of them, and these overt acts of Defendants pursuant to the conspiracy and in furtherance of the design and purpose of it, plaintiff trading account was taken to over 1.2 million bushels of soybeans, seriously jeopardizing and placing the plaintiff in a precarious financial condition, of which Plaintiff was unaware. Upon institution of margin calls by Defendant STONE, in or about late May, 2004 when the soybean futures market declined sharply to the detriment of the speculative long futures positions that had been created in the Plaintiff WATSEKA account pursuant to the conspiracy of the Defendants and each of them, Plaintiff WATSEKA was forced into liquidation, all to its damage in excess of the jurisdictional amount of this court, according to proof at the time of trial.

64. The actions of the Defendants, and each of them, where malicious, oppressive, fraudulent, wilful and intentional and as such exemplary and punitive damages should be awarded to plaintiff according to proof at the time of trial.

## COUNT XI

### Illinois Consumer Fraud and Deceptive Business Practices Act

### (Against Defendant WANNINGER and Defendant STONE)

65. Plaintiff repleads and realleges the allegations set forth in Paragraphs 1 through 17 and by this reference incorporates them herein.

66. At all relevant times, there has been in effect in the State of Illinois a certain statute known as the Illinois Consumer Fraud and Deceptive Business Practices Act, set forth as Chapter 815, Act 505 of the Illinois Compiled Statutes, which provides, in pertinent part, as

follows:

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of such material fact with intent that others rely upon concealment, suppression or omission of such material fact ...in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby ..

67.　　Defendant STONE, by and through its agent and employee Defendant WANNINGER, by engaging in unauthorized, speculative, and excessive trading activities in the Plaintiff WATSEKA commodities account, given Plaintiff's stated financial objectives and goals, violated the Illinois Consumer Fraud and Deceptive Trade Practices Act.

68.　　At all relevant times, it was reasonably foreseeable that potential consumers of the services of Defendant STONE, including Plaintiff, would rely on the representations made by Defendant STONE, by and through its agents, that it would comply with the written and oral instructions in trading its commodities account consistent with its financial objectives and goals.

69.　　Plaintiff, and other members of the consuming public, relied on representations of Defendant STONE and its employees and agents that it would trade and manage commodities accounts in keeping with the stated financial objectives of its clients, including Plaintiff. The representations of Defendant STONE, by and through its agents, that it would not speculatively trade its commodities account induced Plaintiff to open a commodities trading account with Defendant STONE and to trade its commodities in such account.

70.     The above stated misrepresentations and fraudulent practices as aforementioned and in paragraphs were material facts and had plaintiff and other members of the investing public been aware of such facts, it and other consumers would not have opened commodities trading accounts with Defendant STONE.

71.     As a direct and proximate result of the above acts and representations made or approved by Defendant STONE, plaintiff has substantial damages in excess of the jurisdictional amount of this court, together with the costs and attorneys fees associated with this suit according to proof at the time of trial.

72.     The action of Defendant STONE by and through its agents, including Defendant WANNINGER were malicious, willful, intentionally and oppressive and plaintiff is entitled to punitive or exemplary damages according to proof at the time of trial.

## COUNT XII

### (Breach of Contract Against Defendant STONE)

73.     Plaintiff repleads and realleges the allegations set forth in Paragraphs 1 through 17 hereof, and by this reference incorporates herein as though fully set forth.

74.     On or about August, 1995, Plaintiff and Defendant STONE entered into a contract to open a commodities trading account. That contract has been previously attached to this complaint and incorporated herein as Exhibit "A".

75.     Pursuant to such Agreement, Defendant was to trade Plaintiff's commodity account in hedge transactions only, consistent with Plaintiff's financial goals and objectives and compliant will Illinois state law.

22

76.     Beginning January 1 and ending May 31, 2004, Defendant STONE breach said contract in that by and through its agent Defendant WANNINGER, in that it traded Plaintiff's account in unauthorized, excessive in type and kind, speculative trading in soybean contracts that were "long" for its own benefit and with disregard to Plaintiff's financial objectives, instructions and Illinois law.

77.     On or about mid-May 2004, prices for soybeans declined and Defendant STONE made a margin call on Plaintiff WATSEKA which resulted in Plaintiff's financial collapse and liquidation.

78.     Plaintiff at all times herein mentioned fully performed all obligations on its part to be performed pursuant to the contract except for those that were otherwise excused by Defendant STONE's conduct as set forth herein.

79.     As a direct and proximate result of the breach by Defendant STONE, Plaintiff has been damage in excess of the jurisdictional amount of this court according to proof at the time of trial.

## COUNT XIII

### (Fraud Against Defendants WANNINGER and STONE)

80.     Plaintiff repleads and realleges the allegations set forth in Paragraphs 1 through 17, 19, 20 and 24 and by this reference incorporate them herein as though fully set forth.

81.     As a direct and proximate result of the actions, omissions and misrepresentations of Defendant STONE's agent and employee, Defendant WANNINGER, Plaintiff WATSEKA sustained damage in excess of the jurisdictional amount of this court according to proof at the

time of trial.

82.    The actions of the Defendants WANNINGER AND STONE, and each of them,

were wanton, reckless, oppressive and malicious and without regard to Plaintiff's benefit or

interests, investment objectives, financial condition, or Illinois law. As a result, the Plaintiff is

entitled to exemplary and punitive damages in an amount according to proof at the time of trial.

WHEREFORE, Plaintiff prays judgment against the Defendants, and each of them, as

follows:

AS TO THE FIRST,  SECOND and THIRD COUNTS OF THE COMPLAINT

1.    Damages in an amount equal to the loss in value of Plaintiff's commodities

account from October 1, 2003 through May 31, 2004 with Defendant STONE according to proof

at the time of trial;

2.    Commissions paid to Defendant WANNINGER on all such trades set forth in

provision (1) above according to proof at the time of trial;

3.    For such other and further relief as the court may deem just and proper.

AS TO THE FOURTH AND FIFTH COUNTS OF THE COMPLAINT

1.  Damages in an amount equal to the loss in value of Plaintiff's commodities account

with Defendant STONE from October 1, 2003 through May 31, 2004, according to proof at the

time of trial;

2. Commissions paid to Defendant WANNINGER on all such trades set forth in

provision (1) above according to proof at the time of trial;

3.  Punitive or exemplary damages equal to two times the amount of actual damages according to proof at the time of trial;

4.  For such other and further relief as the court may deem just and proper.

AS TO THE SIXTH COUNT OF THE COMPLAINT

1.  Damages in an amount equal to three times the damages sustained by Plaintiff according to proof at the time of trial;

2.  For costs of suit herein, including reasonable attorneys fees;

3.  For such other and further relief as the court may deem just and proper.

AS TO THE SEVENTH, EIGHTH and NINTH COUNTS OF THE COMPLAINT

1. Damages in an amount in excess of the jurisdictional amount of this court according to proof at the time of trial;

2.  For such other and further relief as the court deems just and proper.

AS TO THE TENTH and ELEVENTH COUNTS OF THE COMPLAINT

1.  Damages in an amount in excess of the jurisdictional amount of this court, according to proof at the time of trial;

2.  Punitive or exemplary damages according to proof at the time of trial;

3.  For such other and further relief as the court may deem just and proper.

AS TO THE TWELFTH COUNT OF THE COMPLAINT

1. Actual and consequential damages in excess of the jurisdictional amount of this court, according to proof at the time of trial;

2. Interest at the legal rate;

3. For such other and further relief as the court deems just and proper.

AS TO THE THIRTEENTH COUNT OF THE COMPLAINT

1. Damages in an amount in excess of the jurisdictional amount of this court, according to proof at the time of trial;

2. Punitive or exemplary damages according to proof at the time of trial;

3. For such other and further relief as the court may deem just and proper.

Respectfully submitted,

Robert Dodd & Associates, P.C.


By: s/ Margaret M. Wright
Margaret M. Wright, Bar Number 6288725
ATTORNEY FOR PLAINTIFFS
Robert Dodd & Associates, P.C.
201 Chase Bank Building
303 S. Mattis Avenue
Champaign, IL 61821-3051
Telephone: (217) 356-6363
Facsimile: (217) 355-1358
Email: mmwright@doddlaw.net

**JS 44** (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
WATSEKA FARMERS GRAIN COOPERATIVE COMPANY, an Illinois cooperative corporation,

### DEFENDANTS
F.C. Stone Group, Inc., an Iowa Corp; Michael Wanninger and Charles Cameron

**(b)** County of Residence of First Listed Plaintiff    Iroquois
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Polk
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Robert Dodd & Associates, P.C.
303 S. Mattis, Ste. 201

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☒ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
7 USCA Sect. 625(c); 18 USCA Sect. 1965(a); 28 USCA Sect. 1337

Brief description of cause:
Commodities Fraud, RICO, Breach of Contract

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE                                    DOCKET NUMBER

DATE                                    SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #            AMOUNT            APPLYING IFP            JUDGE            MAG. JUDGE