UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| WATSEKA FARMERS GRAIN COOPERATIVE COMPANY, an Illinois cooperative corporation,<br><br>          Plaintiff,<br>     v.<br><br>F C STONE GROUP, INC., an Iowa corporation; MICHAEL WANNIGER, and CAMERON CHARLES,<br><br>          Defendants. | Case No. 06-2104 |

# O R D E R

In May 2006, Plaintiff, Watseka Farmers Grain Cooperative Company, filed a Complaint for Damages (#1) against Defendants F. C. Stone Group, Inc., Michael Wanninger, and Charles Cameron.[1]  Jurisdiction is based on federal question pursuant to 28 U.S.C. § 1331 because some of Plaintiff's claims are based on federal law.

In August 2006, Defendants F. C. Stone and Michael Wanninger filed a Motion To Dismiss (#13).  After reviewing the parties' pleadings and memoranda, this Court **GRANTS in part** and **DENIES in part** Defendant F.C. Stone, LLC's and Michael Wanninger's Motion To Dismiss **(#13).**

## I.  Background

Unless otherwise noted, the following background is taken from the complaint.  Plaintiff is an Illinois cooperative grain elevator corporation.  Defendant F.C. Stone Group (hereinafter "Stone") is a "futures commission merchant" registered with the Commodity Futures Trading Commission.  Stone was formed in July 2001 after the merger of Saul Stone and Company and

---

[1] The complaint's caption names this Defendant "Charles Cameron" but refers to him throughout the complaint as "Cameron Charles," "Defendant Charles," or simply "Charles." The Court will refer to him as Defendant Charles.

Farmers Commodities Corporation.[2] Defendant Wanninger is a registered commodities broker who worked for Stone or its predecessor companies in Stone's Champaign office at relevant times.

As part of its financial goals, Plaintiff has engaged in hedging its grain positions on the futures market. In August 1995, Plaintiff entered into a customer agreement (hereinafter "Agreement") to open a commodity trading account with Defendant Stone to "purchase and sell Commodity Contracts for Customer in accordance with Customer's oral and written instructions." (Agreement, #1-2, ¶ 1.) At that time, Plaintiff informed Stone that its financial objectives were primarily to guard against fluctuation in grain prices so as to avoid substantial losses and that its trading account should be used for hedge transactions commensurate with its financial goals. (#1, ¶ 11.)

In 1995, Defendant Charles was Plaintiff's general manager. (Agreement, #1-2, p. 8.) He was authorized to give instructions to Stone for purchases, sales, and other account transactions. (#1-2, p. 9.) In 1996, Defendant Wanninger began placing orders from Charles on wheat futures that were speculative because they took Plaintiff "out of position" on wheat. As a result of routine oversight of accounts, Dean Chestnut, manager of Stone's Champaign office, noticed that Wanninger was day-trading Plaintiff's account and placing speculative wheat contracts. Chestnut informed Plaintiff's board of directors that Wanninger had accepted Charles's orders and had day-traded the Watseka accounts and placed Plaintiff out of position on wheat. The board was unaware of Wanninger's and Charles's speculative activity and had not authorized it. (#1, ¶ 12.) The board then instructed Stone, through its agent Chestnut, not to engage in grain speculation of Watseka's accounts. Stone reprimanded Wanninger and replaced him with another broker. Stone assured the board that speculation of its accounts would not occur again. (#1, ¶ 13.)

---

[2]Subsequent references to Defendant Stone include its predecessor companies.

In October 2003, Defendant Wanninger again began placing orders from Defendant Charles that converted Plaintiff's soybean hedge positions into unauthorized speculative positions. (#1, ¶ 15.) As a result of the unauthorized speculative trading of its account, Plaintiff accumulated a net long soybean futures position of approximately 1.2 million bushels. Thus, Defendants Stone and Wanninger placed Plaintiff at substantial financial risk in the soybean futures market. (#1, ¶ 16.) When the soybean futures market declined sharply, Stone instituted margin calls on the long positions that Plaintiff could not meet, resulting in liquidation of Plaintiff's accounts in an amount in excess of four million dollars. This forced Plaintiff into liquidation. Plaintiff closed on May 24, 2004, and surrendered its grain dealer and warehouse licenses to the Illinois Department of Agriculture. (#1, ¶ 17.)

Plaintiff's complaint alleges the following thirteen counts. Count I alleges that Defendant Wanninger violated 7 U.S.C. § 6b of the Commodities Exchange Act (hereinafter "CEA") by placing orders for unauthorized speculative trading in soybeans and failing to disclose the trading to Plaintiff's board of directors. Count II alleges that Wanninger violated 7 U.S.C. § 6b by churning Plaintiff's account. Count III alleges that Defendant Stone violated 7 U.S.C. § 2(a)(1)(B) because Wanninger's fraudulent conduct occurred within the scope of his employment. Count IV alleges that Wanninger violated 7 U.S.C. § 25(a)(1)(B) when he engaged in speculative trading. Count V alleges that Stone violated 7 U.S.C. § 25(a)(1)(B) by willfully aiding and abetting Wanninger's unauthorized speculative trading. Count VI alleges that Wanninger and Stone violated 18 U.S.C. § 1962 of the Racketeer Influenced and Corrupt Organizations Act (hereinafter "RICO"). Counts VII and VIII, against Stone, allege breach of fiduciary duty and negligent supervision, respectively. Count IX, against Wanninger and Stone, allege negligence per se. Count X alleges that Wanninger, Stone, and Charles conspired to defraud Plaintiff. Count XI alleges that Wanninger and Stone violated Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILL. COMP. STAT. 505/2) (hereinafter "CFDBPA"). Count XII, against Stone, alleges breach of contract. Count XIII, against Wanninger and Stone, alleges fraud.

## II.  Standard

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits of the case.  *Miller v. Reebie Storage and Moving Co., Inc.*, No. 93 C 3986, 1993 WL 414689, *1 (N.D. Ill. Oct. 15, 1993).  The Court should dismiss the case only if the nonmoving party can prove no set of facts consistent with the allegations of the complaint that would entitle him to relief.  *Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312, 1319-20 (7th Cir. 1997).  When considering a motion to dismiss, the Court must accept as true all well-pleaded factual allegations in the claim and draw all reasonable inferences in the light most favorable to the nonmoving party.  *Gutierrez v. Peters*, 111 F.3d 1364, 1368-69 (7th Cir. 1997).

## III.  Analysis

Defendants argue that the Court should dismiss the complaint for the following reasons: (1) The one-year statute of limitations set forth in the Agreement bars the claims; (2) the two-year statute of limitations in the CEA bars the claims in Counts I through V because all trades occurred before May 23, 2004; (3) the complaint fails to state any claims because the Agreement authorized Defendant Charles to place trades; (4) Count IX fails to state a claim for negligence per se; and (5) Count XI fails to state a claim for violation of the CFDBPA.

### A.  One-Year Statute of Limitations in Contract

Defendants first argue that the one-year statute of limitations (hereinafter "SOL") in the Agreement bars all claims and that the two-year SOL set forth in the CEA (7 U.S.C. § 25(c)) bars all claims under the CEA based on trades placed before May 23, 2004.  Plaintiff responds that (1) the language in the Agreement is conditional and therefore the one-year SOL does not apply; (2) alternatively, the Agreement language is ambiguous and must be construed against Defendant Stone, the drafter.  In addition, Plaintiff contends that (3) the statutes of limitation (both the one-year and two-year SOLs) should be tolled based on Defendants' fraudulent concealment of information regarding the speculative trading; and (4) the date at which the SOLs began to run is a question of fact that cannot be decided on a motion to dismiss.

The Agreement states as follows: "EXCEPT AS OTHERWISE PROVIDED BY LAW OR REGULATION, NO ACTION, REGARDLESS OF FORM, ARISING OUT OF TRANSACTIONS UNDER THIS AGREEMENT MAY BE BROUGHT BY CUSTOMER MORE THAN ONE YEAR AFTER THE CAUSE OF ACTION AROSE." (Agreement, #1-2, ¶ 20.)

Defendants cite *Stephan v. Goldinger* in support of their position. *Stephan v. Goldinger*, 325 F.3d 874, 876 (7th Cir. 2003). The issue in that case, however, was whether the two-year statutory limitations period in the CEA could be modified by contract. The contract in that case expressly provided for a one-year SOL. *Id.* The Seventh Circuit court determined that the statutory limitations period was subject to modification by contract and held that one year was an acceptable length for a SOL. Thus, *Stephan* tells us that parties can modify a SOL by agreement.

Similar to the contract in *Stephan*, the contract in this case establishes a one-year SOL. Unlike the contract in *Stephan* however, the contract in this case modifies the one-year SOL with the conditional language "except as otherwise provided by law or regulation" and that distinction is critical. Nevertheless, the Court finds nothing ambiguous about that phrase. It simply means that the one-year SOL will apply unless a statute or regulation establishes a different SOL applicable to a particular claim. Accordingly, the Court disagrees with Defendants' contention that the contractual one-year SOL bars all claims and denies the motion to dismiss all claims based on that statute of limitations.

### B. Two-Year SOL and Accrual of Claims

As to the CEA claims alleged in Counts I through V, the CEA provides a two-year SOL.[3]

---

[3] Plaintiff also states that Illinois law specifies the SOL for claims of fraud, negligence, breach of fiduciary duty, and written contract. *See* 815 ILL. COMP. STAT. 5/13, 735 ILL. COMP. STAT. 5/13-205, and 735 ILL. COMP. STAT. 5/13-206. RICO has a four-year SOL (*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 152 (1987)). Claims brought pursuant to the CFDBPA must be filed within three years after the cause of action accrues. (815 ILL. COMP. STAT. 505/10a.)

5

*See* 7 U.S.C. § 25(c) (stating, in pertinent part, as follows: "The United States district courts shall have exclusive jurisdiction of actions brought under this section. Any such action shall be brought not later than two years after the date the cause of action arises."). Defendants argue that this two-year SOL bars all of the CEA claims because the claims are based on purportedly unauthorized trades, all of which occurred before May 24, 2004. According to Defendants, the claims accrued when the trades occurred, therefore the SOL began running more than two years before May 23, 2006, the date Plaintiff filed the suit. Defendants specifically contend that Plaintiff should have known of the alleged misconduct more than two years prior to the period from October 2003 through May 31, 2004, that Plaintiff should have exercised due diligence and reviewed its account statements, that Plaintiff should have reviewed account statements to monitor Defendant Charles's activities, and that Plaintiff waived claims resulting from failure to receive account statements based on Paragraph 16 of the Agreement.

Plaintiff contends that its CEA claims accrued on May 24, 2004, the date Plaintiff closed its doors. Alternatively, Plaintiff contends that the Court should equitably toll the SOL because the accrual date is a question of fact that cannot be determined on a motion to dismiss and because Defendants fraudulently concealed information regarding the speculative trading. Plaintiff notes that the complaint does not allege the date it discovered the fraud underlying the claims and it need not do so. *See Xechem, Inc. v. Bristol-Myers Squibb Co*, 372 F.3d 899, 901 (7th Cir. 2004) ("Complaints need not contain *any* information about defenses and may not be dismissed for that omission.").

The parties appear to agree that the CEA's two-year SOL applies to the claims in Counts I through V, and their disagreement actually focuses on when those claims accrued. The question of claim accrual is controlled by federal law. *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992). In a federal question case, absent a contrary directive from Congress, the discovery rule determines when the SOL begins to run; that is, a claim accrues when the plaintiff knows or has reason to know of the injury giving rise to the cause of action. *Id*. At this stage, the Court cannot determine, based solely on the allegations of the complaint, when Plaintiffs' claims accrued. *See Clark v. City of Braidwood*, 318 F.3d 864. 767-68 (7th Cir. 2003) (stating that "the

question [at a motion to dismiss] is only whether there is *any* set of facts that if proven would establish a defense to the statute of limitations"); *Marks v. CDW Computer Ctrs., Inc.,* 122 F.3d 363, 367 (7th Cir. 1997) (stating that whether plaintiffs had sufficient information to put them on notice of their claims is a question of fact and is "often inappropriate for resolution on a motion to dismiss under Rule 12(b)(6)").  Accordingly, the Court denies the motion to dismiss Counts I through V based on the two-year statute of limitations.

### C.  The Question of Defendant Charles's Authority

Defendants next argue that Plaintiff's claims fail as a matter of law.  Specifically, Defendants contend that all claims are based on an assumption that the trades placed by Defendant Charles were unauthorized; in contrast, the Agreement clearly provides that Charles had extremely broad authority to place trades.

The Certified Corporate Resolutions Concerning Corporate Authorization To Trade Commodity Futures attached to the Agreement provides that Defendant Charles is an "Empowered Individual," and states as follows:

> [E]ach of the Empowered Individuals is further authorized, without limiting the generality of such authorization, to give oral or written instructions to FCC on behalf of the Corporation for purchases, sales, delivery of property, or all other transactions relating to the conduct of said account or accounts or Commodity Contracts to the fullest extent and generally to do and take all actions necessary or desirable in connection with any such account.

Agreement, #1-2, p. 9.  The Agreement further states that in the event of any change in the office or powers of any of the Empowered Individuals, Plaintiff's Secretary "shall certify such changes to FCC [(Stone)] in writing delivered to FCC."  (#1-2, p. 10.)  Based on this language, Defendants contend that the Agreement authorized Charles to order the speculative trades unless Plaintiff removed Charles's name from the list of Empowered Individuals.  Because Plaintiff failed to do so, Defendants should not be liable for any trades that Charles ordered.

Plaintiff responds that Defendants cannot rely on the language in the Agreement granting Defendant Charles authority to authorize trades because (1) Defendants agreed to modify the

terms of the Agreement to exclude speculative trading from Plaintiff's account; and (2) Defendants were aware that Charles was exceeding his authority.  In support, Plaintiff cites *Tadros v. Kuzmak*, 660 N.E. 2d 162, 170 (Ill. App. Ct. 1995) ("The law seems well settled; the terms of a written contract can be modified by a subsequent oral agreement even though, as in this case, the contract precludes oral modifications"), and *Chase v. Consol. Foods Corp.*, 744 F.2d 566, 569 (7th Cir. 1984) ("An appearance of authority that fools no one does not bind the principal.").

Paragraph 1 of the Agreement, titled Trading Authorization, provides as follows:  "FCC [(Stone)] is authorized to purchase and sell Commodity Contracts for Customer in accordance with Customer's oral or written instructions."  (#1-2, p.1.)  Plaintiff alleges that its board of directors orally instructed Stone not to engage in speculative trading of Plaintiff's accounts.  In light of those specific instructions, the Court cannot conclude that Defendant Charles was authorized to place speculative orders, even though he may have had general authority to place other orders.  Accordingly, the Court denies the motion to dismiss the claims based on the language of the corporate resolution that named Charles an "Empowered Individual."

### D.  The Claim of Negligence Per Se

In Count IX, Plaintiff alleges that Defendants Wanninger and Stone were negligent per se based on an alleged statutory violation of Section 10 of the Illinois Grain Code (240 ILL. COMP. STAT. 40/10-10).  Defendants argue that Plaintiff has failed to state a claim of negligence per se because the violation of a statute does not constitute negligence per se unless the legislature clearly intends to impose strict liability.  *See Test Drilling Serv. Co. v. Hanor Co.*, 322 F. Supp. 2d 957, 963 (C.D. Ill. 2003) (declining to impose strict liability under the Illinois Environmental Protection Act (415 ILL. COMP. STAT. 5/1 *et seq*.) because the statute did not show that the legislature intended to impose strict liability for statutory violations) (citing *Abbasi v. Paraskevoulakos*, 718 N.E.2d 181, 186 (Ill. 1999) (holding that the defendant was not negligent per se as a result of violating the Lead Poisoning Prevention Act (410 ILL. COMP. STAT. 45/1 *et seq*.) based on the statutory language)).

Defendants state that the Illinois Grain Code does not contain language imposing strict liability nor does it indicate any intent to impose strict liability. Furthermore, the statutory section cited in Count IX imposes an obligation on Plaintiff rather than upon Defendants because it addresses the rights and responsibilities of grain dealers. Plaintiff has not responded to this argument and has presented no objections to Defendants' authority or reasoning. Therefore, the Court dismisses Count IX.

### E. The CFDBPA Claim

Defendants next argue that Plaintiff failed to state a claim under the CFDBPA because Count XI fails to implicate consumer protection concerns, that is, a consumer nexus. *See Cent. Diversey M.R.I. Ctr. v. Med. Mgmt. Scis.*, 952 F. Supp. 575, 577 (N.D. Ill. 1996) (stating, in the context of a business suing a business, that an CFDBPA claim must implicate consumer protection concerns). To establish this consumer nexus, a plaintiff must allege that the conduct involved trade practices that were directed to the market generally or that otherwise implicated consumer protection concerns. *Athey Prods. Corp. v. Harris Bank Roselle,* 89 F.3d 430, 436-37 (7th Cir. 1996).

Business plaintiffs must make a stronger showing than traditional consumers to have standing under the CFDBPA. *Underwriters Labs., Inc. v. Solarcom LLC*, No. 02 C 3933, 2002 WL 31103476, *4 (N.D. Ill. Sept. 18, 2002) (unreported). A business filing suit under the CFDBPA must allege either that the harm was a result of conduct directed to the market or otherwise implicates consumer protection concerns; or that the plaintiff was acting as a customer of the defendant and the alleged fraud amounts to more than merely a breach of contract. *Id*.

Plaintiff contends that it has adequately alleged a consumer nexus. In support, Plaintiff relies on *Heinold Commodities, Inc. v. McCarty*, in which the court held that deceptive practices in soliciting investment in commodities futures are presumed to injure the public and no specific allegation of public injury is necessary. *Heinold Commodities, Inc. v. McCarty,* 513 F. Supp. 311, 312-13 (N.D. Ill. 1979).

In Count XI, Plaintiff alleges that Defendants violated the CFDBPA by engaging in unauthorized, speculative, and excessive trading activities. By itself, this does not appear to allege a consumer nexus. Plaintiff also alleged that Plaintiff and other members of the consuming public relied on Defendants' representations that it would not engage in speculative trade. Taken in the light most favorable to Plaintiff, this allegation arguably addresses the solicitation rather than the management of its account with Stone. Based on *Heinhold*, such an allegation may be presumed to injure the public, therefore no specific allegation of public injury is necessary. *Id.* Thus, for purposes of a motion to dismiss, Plaintiff has satisfied the consumer nexus requirement and the Court denies the motion to dismiss Plaintiff's CFDBPA claim.

## IV.  Summary

For the reasons set forth above, this Court **GRANTS** Defendants F.C. Stone, LLC's and Michael Wanninger's Motion To Dismiss **(#13)** as to the claim of negligence per se in Count IX and **DENIES** the motion as to the remaining claims.

ENTER this 15th day of December, 2006.

s/ DAVID G. BERNTHAL
U.S. MAGISTRATE JUDGE
